RUSSIA CEMENT COMPANY *vs.* LE PAGE COMPANY
& another.

SAME *vs.* SAME & others.

Suffolk.    December 14, 15, 1898. — October 19, 1899.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER,
HAMMOND, & LORING, JJ.

*Bond to dissolve Attachment — " Final Judgment " — Statute — Rule of United States Courts — Supersedeas Bond — Entry of Judgment nunc pro tunc — Allowance of Amendment — Filing of Bond in Appellate Court.*

If a judgment entered for the plaintiff in an action in the United States Circuit Court is set aside, upon a writ of error, by the Circuit Court of Appeals, and subsequently another judgment for the plaintiff is entered in the former court, the last named judgment is the one intended in a bond given to dissolve an attachment made on the original writ and conditional for the payment of the "final judgment" recovered in the action, and by the provisions of Pub. Sts. c. 161.

Under Rule 29 of the Supreme Court of the United States, and U. S. Rev. Sts. § 1000, a supersedeas bond taken upon the allowance of a writ of error to a Circuit Court of the United States by a Circuit Court of Appeals, when the judgment for the defendant in error is for the recovery of money and is secured by an attachment and by a bond to dissolve an attachment, both of which are security for any final judgment to be rendered in the original action, is not a substitute for the attachment or for the previous bond, and does not dissolve the attachment or discharge the bond.

It is no objection to the enforcement of a bond given to dissolve an attachment and conditioned for the payment, within thirty days thereafter, of the final judgment recovered in the action, that the judgment was entered as of a previous date.

The defence, that a bond given to dissolve an attachment made in an action brought in the United States Circuit Court has been discharged by the allowance of amendments to the declaration, cannot prevail in an action upon the bond, if it appears to this court from an inspection of the declaration and the several amendments that they were all for the cause of action relied on by the plaintiff when the action was commenced.

That a bond to dissolve an attachment made in an action begun in the United States Circuit Court, given while a writ of error was pending in the Circuit Court of Appeals, was filed in the latter court, and not in the former, is no defence to an action upon the bond.

TWO ACTIONS OF CONTRACT, upon two bonds executed by the first named defendant as principal and by the other defendants as sureties.   After the former decision, reported 167 Mass. 222, the cases were tried together in this court, before *Morton,* J.,

who ordered judgment to be entered for the defendants in each case; and, at the plaintiff's request, reported the cases for the consideration of the full court. The facts appear in the opinion.

The cases were argued at the bar in December, 1898, and afterwards were submitted on briefs to all the justices.

*C. H. Drew & A. M. Lyman,* for the plaintiff.

*W. C. Cogswell,* (*S. H. Hooper* with him,) for the defendants.

BARKER, J. When these cases were first here we overruled the plaintiff's demurrers to the answers, placing that decision upon two grounds, first, that the judgment of February 13, 1892, was the final judgment intended by the bonds in suit; and, secondly, that the supersedeas bond approved on the same date was a substitute for whatever security the plaintiff had when that bond was given. *Russia Cement Co.* v. *Le Page Co.* 167 Mass. 222. Since that decision the cases have been heard upon the merits by Mr. Justice Morton, who reports them to the full court with the statement that he ordered judgments for the defendants, because he was of opinion that the former decision was adverse to the plaintiff's right to recover upon either bond; and that but for the former decision he should have ruled in the plaintiff's favor. This, and the contention now made, that the bonds were taken in pursuance of a remedy given by a law of the United States and in proceedings where the functions and incidents of a writ of error differ from those of such a writ under our State statutes and practice, have led us to examine the questions presented by the report. No doubt could have been felt of the correctness of the former decision if, as was then supposed, the practice in the federal courts was similar to our own, and so the question, in effect, one of local law.

The actions are upon two bonds, one dated December 9, 1889, the other March 12, 1892. On November 30, 1889, the plaintiff sued out against the Le Page Company, in the Circuit Court of the United States for the district of Massachusetts, a writ of attachment, upon which the property real and personal of the Le Page Company was attached to the amount of $50,000, which amount was reduced by order of the court to $20,000. The bond of December 9, 1889, was given for the purpose of dissolving the reduced attachment so far as it held personal property.

The bond of March 12, 1892, was given to dissolve the attachment upon real estate.   Upon the writ so brought a judgment for the plaintiff for the sum of $12,000 damages and $40.93 costs of suit was entered in the Circuit Court on October 30, 1894, as of May 14, 1894, and this judgment finally disposed of the cause begun in that court by the writ of November 30, 1889.

At the hearing before Mr. Justice Morton the execution of the bonds was admitted, and they were produced and put in evidence.   One condition of each bond is, that the " Le Page Company shall within thirty days after the final judgment in the aforesaid action pay to the plaintiff therein named amount, if any, which it shall recover in such action."   No part of the judgment has been paid, and this nonpayment is relied upon by the plaintiff as a breach of the conditions of the bonds.

The law of the United States which in terms authorized the attachment is as follows : " In common law causes in the circuit and district courts the plaintiff shall be entitled to similar remedies, by attachment or other process, against the property of the defendant, which are now provided by the laws of the State in which such court is held for the courts thereof ; and such circuit or district courts may, from time to time by general rules adopt such State laws as may be in force in the States where they are held, in relation to attachments and other process : Provided, That similar preliminary affidavits, or proofs, and similar security, as required by such State laws, shall be first furnished by the party seeking such attachment or other remedy."   U. S. Rev. Sts. § 915.

Irrespective of a practice which may have obtained to some extent in the federal courts of resorting to the remedy by attachment by force of the more general provisions of the federal statutes regulating practice, Congress, by this statute, expressly adopts, as the law of the United States in the district of Massachusetts, the State law of attachment ; and the remedy so given to plaintiffs in this district carries with it the incidents of the State remedy.   The method to be followed in making an attachment, in prosecuting it to effect, and in determining when and how the benefit of the remedy is lost, are to be looked for in the State law.

The statute quoted was derived from an act of Congress passed on June 1, 1872. See U. S. St. June 1, 1872, § 6 ; 17 U. S. Sts. at Large, 197. Our attention has not been called to any rule of the Circuit Court for this district in force before November 30, 1889, and adopting the State laws relating to attachment. While there were changes in the Massachusetts law of attachment between the time when the Revised Statutes of the United States took effect, and November 30, 1889, none of these changes seem material to the decision of the cases at bar, and we refer for convenience to the Public Statutes of Massachusetts as defining the remedy by attachment out of the exercise of which by the plaintiff these cases arise.

Most of these statute provisions are found in Pub. Sts. c. 161, §§ 38–129. The general scheme of the remedy is that all real and personal estate liable to be taken upon execution may be attached upon the original writ, and held as security to satisfy such judgment as the plaintiff may recover. Pub. Sts. c. 161, § 38. If excessive, the amount of the attachment may be reduced. Pub. Sts. c. 161, § 121. The defendant, before final judgment, may release the property attached, or such part of it as he may elect, by giving bond with condition to pay the plaintiff in thirty days after final judgment the sum fixed as the value of the property so released, or so much of that sum as may be necessary to satisfy the amount of the recovery. Pub. Sts. c. 161, § 126. Any person whose goods or estate are attached may, at any time before final judgment, dissolve the attachment by giving bond with condition to pay to the plaintiff the amount, if any, that he may recover, within thirty days after the final judgment in such action. Pub. Sts. c. 161, § 122. If final judgment is rendered for the plaintiff, the goods and estate then remaining attached shall be held for thirty days after the judgment, in order to their being taken on execution. Pub. Sts. c. 161, § 52. If the final judgment is for the defendant, the attachment is forthwith dissolved. Pub. Sts. c. 161, § 54. The final judgment intended in these provisions is that which is rendered in the original action, whether upon appeal or otherwise, and not such as may be rendered upon a writ of error or writ of review. Pub. Sts. c. 161, § 55. See also St. 1875, c. 33 ; Pub. Sts. c. 153, § 12 ; c. 187, § 20 ; St. 1895, c. 234, § 7.

It has never been contended that the plaintiff's attachment was not valid and subsisting when the first bond was given on December 9, 1889. That bond follows the requirements of Pub. Sts. c. 161, §§ 122–125, and was filed with the clerk of the court in which the suit was pending. It is a proper statute bond for the amount of which, if there has been a breach of condition, the plaintiff should have judgment, unless the bond has been in some way discharged, as the defendants contend.

The bond sued upon in the second action stands differently. It was filed in the Circuit Court of Appeals on March 12, 1892. Since the first bond was given there had been two trials of the cause in the Circuit Court, one on November 19, 1890, when the court found a variance between the declaration and the proof; the other on January 15, 1891, on an amended declaration, and resulting in a verdict of $8,000 for the plaintiff. On February 12, 1892, exceptions were allowed, and on February 13, 1892, judgment was entered in the Circuit Court upon the verdict for the plaintiff, in the sum of $8,502.66. On the same day a writ of error to the Circuit Court was sued out of the Circuit Court of Appeals by the Le Page Company and a supersedeas bond given in the penal sum of $500. This writ of error was pending in the Circuit Court of Appeals until November 1, 1892, when it was there sustained. While the writ of error was so pending, on March 12, 1892, the bond of that date, sued upon in the second of the actions at bar, was given to dissolve the attachment upon the real estate of the Le Page Company. It is plain that this bond was so given upon the theory that the attachment was then subsisting and the action then pending in the Circuit Court of Appeals. If the theory then acted upon was correct, this bond is also a good statute bond. But if the attachment had been discharged by the supersedeas bond, or if the judgment of February 13, 1892, was the final judgment in the action, in the sense in which the words are used in the Massachusetts statutes already cited, the bond of March 12, 1892, being given when no attachment was subsisting, or given after instead of before final judgment, would not be a statute bond. We are now of opinion that the law requires us to overrule our former decision, reported in *Russia*

*Cement Co.* v. *Le Page Co.*, *ubi supra*, so far as that decision holds that the final judgment payment of which the bonds in suit secured was the judgment subsequently reversed, and not the last judgment, and that the supersedeas bond was a substitute for the security theretofore existing. We now hold that the judgment of February 13, 1892, was not the final judgment intended by the terms of the bonds in suit, and by the provisions of our State law of attachments; and also that under the circumstances in which the supersedeas bond of that date was taken, that bond was not a substitute for the security which the plaintiff then had, and did not discharge the first bond or the attachment upon real estate. It also is our opinion that the judgment entered on October 30, 1894, as of May 14, 1894, is the final judgment intended by the terms of the bonds now in suit, and by the Massachusetts statutes as applied to the circumstances of these cases.

The phrase " final judgment " has two meanings. It may indicate the judgment which, if not reversed or modified, will end the litigation in which it is entered, but which may be reversed or modified by a superior tribunal, and which therefore gives to the party aggrieved the right to invoke the action of the higher court. The phrase may also mean that judgment which in fact does end the litigation, by an order of the court in which the cause was begun, or of some higher court to which it is carried, entered in the cause itself, and by virtue of the process by which the suit was commenced. It is in the latter sense that the words " final judgment " are used in the bonds now in suit, and in the provisions which we have above cited from the Massachusetts statutes relating to attachment. The express declaration of the statute, after fixing the beginning of the term of thirty days during which, if the judgment is for the plaintiff, the property attached shall be held in order to be taken on his execution, and the time of the dissolution of the attachment, if the judgment is for the defendant, is that " the final judgment intended . . . is that which is rendered in the original action, whether upon appeal or otherwise, and not such as may be rendered upon a writ of error or writ of review." Pub. Sts. c. 161, § 55.

We must therefore inquire which of the two judgments entered

in the Circuit Court in favor of the plaintiff, upon the same writ, meets these requirements, both positive and negative, of the Massachusetts statute. Each judgment was rendered in the original action, but the first judgment was final only in the sense that it gave the defendant a right to invoke the action of the higher court to correct any errors which might have entered into its rendition. The second judgment was in fact, and in every sense, the final judgment rendered in the original action. We are not now called upon to consider what the rights of the parties would, have been if the first judgment had not been vacated.

Under the laws of the United States and the practice which obtains in its courts, the first judgment was one which the Circuit Court itself might be compelled to vacate by its own order, in consequence of the action of an appellate tribunal. U. S. St. March 3, 1891, §§ 6, 10, 11. In consequence of this quality in the judgment, and of the action of the appellate tribunal in this instance, the first judgment was never a judgment upon which execution could have been issued, or to satisfy which the attached property, if still held by the lien of the attachment, could ever have been levied upon. By an order made on the same day with the first judgment the Circuit Court of Appeals, conformably with the federal law and practice, having been applied to to correct errors which had entered into the judgment, began the exercise of its appellate powers, and made all action to enforce the judgment impossible. Proceeding with its appellate jurisdiction, the Circuit Court of Appeals, on November 19, 1892, having found error, issued its mandate to the Circuit Court, the result of which was the setting aside of the first judgment and of the verdict on which it had been entered. This mandate closed the connection of the Circuit Court of Appeals with the case. Thereupon it was the duty of the Circuit Court to proceed with the case as if there had been no verdict or judgment, and to dispose of the case under the jurisdiction conferred originally by the writ, and by its own proceedings in the original action. This was done, with the result that the judgment rendered on October 30, 1894, as of May 14, 1894, was entered, in the original action, by the court from which the original writ was sued out, and solely by virtue

of the jurisdiction which that court acquired under that writ. Thus the second judgment was in fact and in every sense the final judgment rendered in the original action.

Nor was that judgment a judgment rendered upon a writ of error or writ of review. Under the laws of the United States, while the Circuit Court of Appeals had power upon its writ of error to determine whether any error of the Circuit Court entered into the judgment of February 13, 1892, and by mandate to compel the Circuit Court to set aside that judgment, the Circuit Court of Appeals had itself no power to decide the litigation pending under the writ of November 30, 1889, or to itself enter a judgment upon that litigation, either granting or denying the relief sought therein. U. S. St. March 3, 1891, §§ 10, 11, 12. U. S. Rev. Sts. § 701.

The power of the Circuit Court of Appeals in such a case is different from that exercised by this court upon writs of error to the inferior courts of the Commonwealth. Upon such writs the Supreme Judicial Court of Massachusetts not only examines the judgment of the court below for error, but itself may render such judgment as the inferior court should have rendered, so that in our practice the final judgment is not in such cases rendered in the original action, and is rendered upon the writ of error. Pub. Sts. c. 187, § 2.

A supersedeas bond given upon suing out a writ of error from our State court is, no doubt, a substitute for the plaintiff's security by attachment, or by bond dissolving an attachment; and under the law and practice in the courts of the United States before the year 1867 the giving of a supersedeas bond upon a writ of error from the Supreme Court of the United States to a court of this State had the same effect. *Swett* v. *Sullivan,* 7 Mass. 342. *Otis* v. *Warren,* 16 Mass. 53, 56. *Russia Cement Co.* v. *Le Page Co.* 167 Mass. 222. Pub. Sts. c. 161, § 55; c. 187, § 5. But the supersedeas bond of February 13, 1892, the effect of which we now have to consider, was not given in the courts of this State nor by force merely of its statutes, and was given under the laws of the United States, and under rules of the courts of the United States which differ from those in force when the case of *Otis* v. *Warren* was decided. The effect of the present bond upon the plaintiff's other security is

to be determined upon consideration of the federal statutes and rules of court under which it was given.

The Circuit Courts of Appeals were established in the year 1891 by a federal statute already cited. They were given appellate jurisdiction to review by appeal or by writ of error certain final decisions in the District and Circuit Courts. All provisions of law then in force regulating the methods and system of review, through appeals or writs of error, were to regulate the methods and system of appeals and writs of error so provided for, including all provisions for bonds or other securities to be required and taken on appeals and writs of error. Upon the decision of the Circuit Court of Appeals, unless that decision is itself reviewed by the Supreme Court of the United States, the cause is remanded to the Circuit or District Court, for further proceedings to be there taken in accordance with the mandate of the Circuit Court of Appeals. U. S. St. March 3, 1891, §§ 6, 10, 11. That court has no power itself to enter a final judgment between the parties, or to issue execution. U. S. Rev. Sts. § 701. Each Circuit Court of Appeals has power to establish rules. U. S. St. March 3, 1891, § 2.

The proceeding in the Circuit Court of Appeals is, therefore, not a proceeding in which that court can finally determine the litigation which it reviews as an appellate court, or can issue a judgment of its own granting or denying the relief sought by the original process. It is an incident in the litigation begun, and which, after the case is remanded, must be ended in the inferior court, like, in some respects, the overruling or sustaining of a bill of exceptions in our own court *in banc*. In such cases, except when execution is awarded, because the exceptions are deemed frivolous and intended for delay, any security which has been taken in the case shall stand as if no judgment had been entered, until an order is made for final judgment. Pub. Sts. c. 153, § 12.

Supersedeas bonds taken in a Circuit Court of Appeals are regulated by a federal statute, U. S. Rev. Sts. § 1000, which requires the justice or judge signing a citation upon a writ of error to take good and sufficient security that the plaintiff in error shall prosecute his writ to effect, and if he fail to make his plea good, shall answer all damages and costs where the writ is

a supersedeas and stays execution, or all costs only where it is not a supersedeas. This provision comes from the judiciary act of U. S. St. September 24, 1789, § 22. Under it, down to the year 1867, when the present rule of the Supreme Court of the United States, quoted below, was adopted, supersedeas bonds in the federal courts were fixed at an amount which in the view of the justice would secure the full amount of the judgment. See *Catlett* v. *Brodie*, 9 Wheat. 553; *Stafford* v. *Union Bank*, 16 How. 135; *Hathaway* v. *The Brantford City*, 32 Fed. Rep. 324. The rule mentioned, adopted by the Supreme Court of the United States in 1867, is now Rule 29 of that court, and Rule 13 of the Circuit Court of Appeals for the First Circuit. It proceeds upon a construction of the federal statute which allows the amount of the bond to be fixed upon the theory that such security as the defendant in error already has, either in the nature of the litigation, or by bond or otherwise, is to continue to protect him, and that the sufficient security required by the statute is to supplement the existing security, and not to be in substitution for it. As this rule was promulgated and acted upon before the adoption of the Revised Statutes of the United States, the construction which it in effect gives to the federal statutes now embodied in U. S. Rev. Sts. § 1000, must be taken to have the sanction of Congress, and to be the true construction of the statute. The rule is as follows: "Supersedeas bonds in the Circuit Court must be taken, with good and sufficient security, that the plaintiff in error or appellant shall prosecute his writ or appeal to effect and answer all damages and costs if he fail to make his plea good. Such indemnity, where the judgment or decree is for the recovery of money not otherwise secured, must be for the whole amount of the judgment or decree, including 'just damages for delay,' and costs and interest on the appeal; but in all suits where the property in controversy necessarily follows the event of the suit, as in real actions, replevin, and in suits on mortgages; or where the property is in the custody of the marshal, under admiralty process, as in case of capture or seizure; or where the proceeds thereof, or a bond for the value thereof, is in the custody or control of the court, indemnity in all such cases is only required in an amount sufficient to secure the sum recovered for the use and

detention of the property, and the costs of the suit, and 'just damages for delay,' and costs and interest on the appeal."

This rule was framed before the enactment of the statute of the United States before referred to, giving to plaintiffs in the federal courts the remedy by attachment upon mesne process, and does not in terms mention security obtained under that remedy.    The fact that the rule remains unchanged since the giving of that remedy, seems to us to warrant the construction that where the judgment dealt with by the supersedeas is a judgment for the recovery of money secured by an attachment made in the suit on. which the judgment is rendered, or by a bond given to dissolve such an attachment, the rule treats the judgment as one secured, and which will continue to be secured otherwise than by the supersedeas bond; and that in such cases the supersedeas bond is intended, not as a substitute for the attachment or for the bond to dissolve the attachment, but primarily and chiefly to secure the costs and interest on the appeal, and just damages for delay.

Since the adoption of this rule the construction given by the federal courts to the statute and to the rule seems to have been that the indemnity given by the supersedeas bond, where the defendant in error has other security for his judgment, is additional security, chiefly intended to insure to him in all contingencies an indemnity for the damages for the delay and for costs and interest upon the appeal.   *Mexican Construction Co.* v. *Reusens*, 118 U. S. 49.     See also *Rubber Co.* v. *Goodyear*, 6 Wall. 153 ; *Jerome* v. *McCarter*, 21 Wall. 17, 28 ; *Kountze* v. *Omaha Hotel Co.* 107 U. S. 378 ; *Hathaway* v. *The Brantford City*, 32 Fed. Rep. 324.

This rule was binding upon the justice who took the supersedeas bond the effect of which is now in question, and is to be considered in its application to the circumstances of the litigation, in determining the effect of the bond.  The judgment of February 13, 1892, was for the sum of $8,502.66.   Unless that judgment was secured by the bond of December 9, 1889, and by the attachment of real estate, it was not " a judgment for money otherwise secured " within the meaning of the rule, and the supersedeas bond must be not only for the whole amount of the judgment, but for such greater sum as would constitute indem-

nity for costs and interest upon the appeal and for just damages for delay. If the judgment was one fully secured by the attachment and the former bond, the supersedeas bond, as we construe the statute and the rule, could be only for such an amount, the judgment being otherwise fully secured, as would constitute indemnity for the damages for delay and costs and interest upon the appeal. To say that the taking of indemnity for such damages, costs, and interest discharges previously existing security for the judgment renders the system nugatory. The rule assumes that such security as already exists for the judgment will continue, and will not be discharged by the taking of the supersedeas bond. If, as is possible, there has been error so affecting the judgment that it must be set aside, the plaintiff in error can never be held answerable on the supersedeas bond. But after the erroneous judgment is vacated, the cause is still to be determined in the court in which it was begun, and may there result in a new and valid judgment for the original plaintiff. If the supersedeas bond were held to discharge all previous security, the indemnity, in consequence of which only the plaintiff in error was allowed to obtain a supersedeas without giving security for the whole amount of the judgment, would be destroyed for his benefit, and to the loss of the original plaintiff, who may ultimately recover a good judgment for the same cause of action. The plaintiff who already had full security for his judgment would be in a worse position than the plaintiff who had none. For the latter the justice must take security for the whole amount of the judgment, including damages for delay and costs and interest upon the appeal. For the fully secured plaintiff he can take security only for damages for delay, costs, and interest upon the appeal, and the act of taking such comparatively unimportant security itself discharges the previously existing security which made it certain that he could collect any valid judgment which he might ultimately recover.

We are, therefore, of opinion that a supersedeas bond taken upon the allowance of a writ of error to a Circuit Court by a Circuit Court of Appeals, when the judgment for the defendant in error is for the recovery of money and is secured by an attachment and by a bond to dissolve an attachment, both of which are security for any final judgment to be rendered in the original

action, is not a substitute for the attachment or for the previous bond, and does not dissolve the attachment or discharge the bond.

It is perhaps needless to say that, as is implied in our former decision, a like result would not follow from the giving of a supersedeas bond in the courts of Massachusetts, where such bond must by our statute be made to secure whatever judgment may be rendered in the court of error, which itself enters the final judgment granting or refusing the relief sought in the original action. See Pub. Sts. c. 187, §§ 2, 5, 19, 39; St. 1895, c. 234, § 7.

It is plain from the amount of the judgment of February 13, 1892, and the amount of the supersedeas bond of the same date, which was for $500 only while the judgment was for $8,502.66, and from the fact that the bond to dissolve the attachment upon personal estate and the return of the attachment of real estate upon the original writ were parts of the record, that the supersedeas bond was given under circumstances which made it an additional and not a substituted security for the present plaintiff, and, therefore, that under our construction of the federal statutes and rules of court it did not discharge the bond of December 9, 1889, nor the attachment of the real estate of the Le Page Company, and that the bond of March 12, 1892, given when the action was before the Circuit Court of Appeals upon the writ of error, was a proper and valid statute bond.

Some defences remain to be considered, with which it was not necessary to deal in the former decision. One is that the plaintiff's security by attachment and by bond has been discharged by the amendments made by the plaintiff to his declaration; another is that the security cannot be enforced because the final judgment was entered on October 30, 1894, as of May 14, 1894. The latter contention is easily disposed of. There was no obligation upon the Le Page Company to pay the amount of that judgment until it was entered. The thirty days after final judgment in which, to avoid a breach of the bonds, the Le Page Company must pay to the plaintiff the amount recovered in the action was the thirty days after October 30, 1894. That the judgment was then entered as of a previous date made no difference with the obligation or the breach.

The contention that the plaintiff cannot recover because the attachment was dissolved and the bonds discharged by the amendments to the plaintiff's declaration needs no extended discussion. The effect of those amendments was the same as if the cause had been pending and the amendments had been allowed in a court of this Commonwealth. U. S. Rev. Sts. §§ 914, 915, 916. Under our statute, Pub. Sts. c. 167, § 85, the cause of action is to be deemed to be the same for which the action was brought when it is made to appear that it is the cause of action relied on by the plaintiff when the action was commenced; and the adjudication of the Circuit Court allowing the amendments is conclusive evidence as to the Le Page Company of the identity of the cause of action. As the amendments were allowed without notice to the sureties, the other defendants in the cases at bar are not concluded by the allowance of the amendments. But it seems to us plain, from an inspection of the declaration and the several amendments, that they were all for the cause of action relied on by the plaintiff when the action was commenced, which cause of action was all the damages which the plaintiff had sustained by the wrongful conduct of the Le Page Company in connection with the plaintiff's trade mark.

The statement of Mr. Justice Morton in his report, that but for the former decision of this court he should have ruled in the plaintiff's favor, involves an implied finding in favor of the plaintiff upon the question of fact as to the cause of action relied on by the plaintiff when the action was commenced, and this finding was amply justified by the facts stated in the report. See *Batchelder* v. *Pierce*, 170 Mass. 260 ; *Driscoll* v. *Holt*, 170 Mass. 262, and cases cited.

The only other contention is that the bond of March 12, 1892, was not a statute bond, because not filed in the Circuit Court. But the writ of error under the laws of the United States seems to us to have been a means of removing the cause for certain purposes to the Circuit Court of Appeals where the bond was filed while the cause was there pending and before it was remanded to the Circuit Court.

By the terms of the report to this court such disposition of the cases is to be made by us as we deem meet. In our opinion the

plaintiff should have judgment in each case for the penal sum of the bond sued on and costs of suit, and the cases should be sent to an assessor to determine the amounts for which executions shall issue, unless the parties shall agree upon the amounts.

*So ordered.*