## NELLIE M. PERKINS *vs.* HARRY K. PERKINS.

Plymouth.    November 9, 1916. — January 3, 1917.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Marriage and Divorce,* Decree *nunc pro tunc. Judgment. Superior Court. Parent and Child. Contract,* Implied.

The function of an order *nunc pro tunc* in general is to put upon the record and to render efficacious some finding, direction or adjudication of the court, made actually or inferentially at an earlier term and which by accident, mistake or oversight was not made a matter of record, or to validate some proceeding actually taken but by oversight or mistake not authorized, or to prevent a failure of justice resulting directly or indirectly from delay in court proceedings subsequent to a time when a judgment, order or decree ought to and would have been entered, save that the cause was pending under advisement. By RUGG, C. J.

In a divorce proceeding a decree granting a divorce placed the children in the custody of the mother, the libellant, and ordered the libellee to pay a certain

sum for their support and to pay for medical services to be rendered by a certain physician. That physician died and thereafter the libellant employed a specialist for one of the children. Subsequently she filed a motion for a modification of the decree which was heard by a judge who filed a memorandum of findings and a suggestion for a decree directing an increase of the amount which the libellee should pay for the support and maintenance of the children and that the selection of physicians for the children should be left to the libellant. More than two years and nine months thereafter and nearly eleven months after a decision by this court, in an action at law by the specialist against the libellee for his services, to the effect that the libellee was not liable because the divorce decree did not authorize the libellant to employ the specialist and the libellee had not assented thereto, the judge indorsed upon a draft of a decree, which had been drawn in accordance with suggestions in his memorandum excepting that it omitted the direction that the selection of physicians should be left to the libellant, an order allowing the decree and directing that it take effect as of the date of the memorandum, and also a further order, to take effect as of a date previous to the date when the services were rendered by the specialist, that the original decree be modified to allow the libellant to make the selection of proper medical attendance for the children. *Held,* that it was within the power of the court to cause such decree to be entered *nunc pro tunc,* and, both parties being before the court, that they were concluded by it so far as their rights as to one another were concerned.

It also was *held* that the order thus entered *nunc pro tunc* in the divorce proceedings had no effect to establish liability on the part of the libellee for the services of the specialist selected and employed by the libellant when she had no authority to do so.

LIBEL FOR DIVORCE, filed in the Superior Court on April 15, 1907.

On June 4, 1907, a decree *nisi* was entered, and it was ordered further that the libellee pay to the libellant as alimony the sum of $1,000 and $10 per week for the support of two children of the parties, "and further, the expense of necessary medical attendance to be rendered to said children by Dr. Burley." Other orders were made relating to custody of the children by the mother and visits of the father with them.

From the report of *Ryder* v. *Perkins,* 219 Mass. 525, it appears that the Dr. Burley mentioned in the decree above described died, and that thereafter the libellant employed one Dr. Johnson, on whose recommendation she consulted Dr. George H. Ryder, an "eye specialist," who in 1911 performed for one of the children the services which were the basis of the action by Dr. Ryder against the libellee, which was begun on March 26, 1912. That action was heard in the Superior Court by a judge without a jury, who found for the plaintiff on June 12, 1913.

In February, 1913, the libellant in the divorce proceedings filed a motion for a revision of the original decree as to visits of the libellee with the children and, because of the death of Dr. Burley, as to the employment of a physician and an increase in the amount of allowance for the children's support. The motion was heard by *Hardy,* J., who on February 25, 1913, filed a memorandum for a new order as to the libellee's visits with the children, containing, as to the medical services, the following:

"There seems to have been such difficulty between the parties, with reference to the expenses of medical services, that I feel that the mother should be left to provide for medical services, in selecting such physicians as she sees fit, while the children are in her custody. I leave that selection to her, and I make an addition to the amount to be paid for the medical attendance upon such children which may be likely to be caused at the rate of $5 a month.

"I therefore direct that the decree be revised in this way with reference to the amount allowed for support. That is, that the respondent, Harry K. Perkins, is to pay the sum of fifty-five dollars ($55) monthly, payable at the end of each and every month, or on the first Monday of each month, to the mother, to be expended by her in accordance with her own discretion and without the requirement that she shall account to the respondent for the sums that are thus to be expended. If it should appear hereafter that she was expending it improvidently, that is subject to the revision of the court. It seems to me it is inequitable to compel the mother to be subjected to the scrutiny of the respondent with reference to every slight expenditure that she may make in the care of such children.

"A decree is to be prepared in accordance with my suggestions."

On December 30, 1913, exceptions of the defendant in *Ryder* v. *Perkins* were allowed in the Superior Court. These exceptions were argued before this court on December 1, 1914, and were sustained in a decision rendered on December 30, 1914, and reported in 219 Mass. 525.

In the divorce proceedings there had been left with the judge a draft decree based upon his suggestions in his memorandum above described, but omitting the suggestion that the libellant should select medical attendance upon the children, it reading, as to an

allowance for the support and maintenance of the children, as follows:

"That so much of the original decree relating to the support of the minor children and the necessary medical attention of the children be modified and revised as follows:

"That the libellee shall pay to the libellant on the first day of each month the sum of fifty-five (55) dollars, which sum shall be used for the support, maintenance, and providing the necessary medical attention for said minor children."

On November 4, 1915, the judge made the following indorsement upon this draft of a decree:

"This decree is to take effect as of February 26, 1913, with the modification that the further decree is to be made that the mother is to be allowed to make the selection of proper medical attendance for the care of said children, which modification is to take effect as of the last Monday of December, 1910."

The libellee appealed "from the modified decree dated November 4, 1915, especially that part which provides that the 'modification is to take effect as of the last Monday of December, 1910.'"

The case was submitted on a brief by the libellee.

*R. H. O. Schulz,* for the libellee.

RUGG, C. J. This is an appeal from a "modified decree" entered by a judge of the Superior Court revising a decree respecting custody and support of children made in connection with a divorce. On June 4, 1907, a decree was entered which, among other matters respecting alimony, custody and support of children, ordered that the libellee pay "the expense of necessary medical attendance to be rendered to said children by Dr. Burley." In 1911 it became necessary for one of the children to be treated by an oculist and Dr. Ryder was employed for this purpose. It was held in *Ryder* v. *Perkins,* 219 Mass. 525, that the defendant, who is the libellee in the case at bar, was not liable under the terms of the decree for the services so rendered. When *Ryder* v. *Perkins* came on for further hearing in the Superior Court after that decision, a motion was made by counsel for the plaintiff, who was also counsel for the libellant in the divorce case, for a revision of the decree in the divorce case so as to include an obligation upon the libellee to pay the "necessary medical expenses for treatment of the two minor children . . . which have occurred up to the

date of this decree." The divorce case was not then before the court, although before that time a motion had been made therein for a revision of the decree relative to medical service for the children. That motion had been heard and a written decision made by the judge, although no decree had been entered, but nothing had been said by the judge or parties about a *nunc pro tunc* entry. On November 4, 1915, a decree was entered modifying the earlier decree by increasing the monthly payments to be made to the libellant by the libellee "for the support, maintenance, and providing the necessary medical attention for said minor children." The earlier decree was further modified so that "the mother is to be allowed to make the selection of proper medical attendance for the care of said children, which modification is to take effect as of the last Monday of December, 1910."

The function of a *nunc pro tunc* order in general is to put upon the record and to render efficacious some finding, direction or adjudication of the court made actually or inferentially at an earlier time, which by accident, mistake or oversight was not made matter of record, or to validate some proceeding actually taken but by oversight or mistake not authorized, or to prevent a failure of justice resulting, directly or indirectly from delay in court proceedings subsequent to a time when a judgment, order or decree ought to and would have been entered, save that the cause was pending under advisement. *Patterson* v. *Buckminster,* 14 Mass. 144. *Perry* v. *Wilson,* 7 Mass. 393. *Terry* v. *Briggs,* 12 Cush. 319. *Tapley* v. *Martin,* 116 Mass. 275. *Mitchell* v. *Overman,* 103 U. S. 62. *Martin* v. *Tapley,* 119 Mass. 116. *Rugg* v. *Parker,* 7 Gray, 172. Exemplifications of various aspects of this rule are found in the entry of *nunc pro tunc* orders in cases where, after verdict but before final judgment, a statute on which liability was founded has been repealed, *Springfield* v. *Worcester,* 2 Cush. 52, 62, *Whiting* v. *Whiting,* 114 Mass. 494, a defendant has deceased in an action which did not survive, *Tapley* v. *Goodsell,* 122 Mass. 176, 181, *Kelley* v. *Riley,* 106 Mass. 339, *Reid* v. *Holmes,* 127 Mass. 326, 328, *Wilkins* v. *Wainwright,* 173 Mass. 212, the statute of limitations has run in a case reversed on writ of error, *Curran* v. *Burgess,* 155 Mass. 86, and a mistake has been made as to interest, *New Orleans* v. *Warner,* 176 U. S. 92. Where a receiver has omitted to procure an antecedent order authorizing the

conduct of litigation by him in the court of another jurisdiction, "an order *nunc pro tunc* submitting the question so litigated to that court" has been made. *Attorney General* v. *American Legion of Honor,* 196 Mass. 151, 163. Judgment upon a bond which ought to have been entered before reference to an assessor, but which was not so entered, may be made to take effect as of an earlier day. *Choate* v. *Arrington,* 116 Mass. 552. *Donaher* v. *Flint,* 188 Mass. 525, 528. See also, *Cowley* v. *McLaughlin,* 137 Mass. 221, and *Russia Cement Co.* v. *Le Page Co.* 174 Mass. 349, 354. Where a statute required commissioners to be appointed by the court within a certain time, and the proceeding, although seasonably begun, was contested as to its constitutionality until after the time limited had expired, appointment was made to take effect as of an earlier date. *Agawam* v. *Hampden,* 130 Mass. 528, 539. Since St. 1885, c. 384, § 13, now R. L. c. 177, § 4, it has been provided by express statute that the Superior Court may order every judgment, order or decree "to be entered as of an earlier day than the day of the entry."

Our decisions have gone quite as far as those of other States in the allowance of *nunc pro tunc* orders and decrees. The rule sometimes has been stated in narrower terms than that here made, although decisions of other jurisdictions perhaps are not in conflict with our own. See *Perkins* v. *Hayward,* 132 Ind. 95, 100; *Cox* v. *Gress,* 51 Ark. 224, 231; *Cleveland Leader Printing Co.* v. *Green,* 52 Ohio St. 487; *Jillett* v. *Union National Bank,* 56 Mo. 304, 306. It has been held that a defect in a judgment, order or decree which expressed exactly the intention of the court at the time when it was made cannot be remedied by a *nunc pro tunc* entry, and that an initial infirmity cannot be bolstered by the entry of a new order to take effect retrospectively as of a date anterior to that on which in fact it is entered. *Gray* v. *Brignardello,* 1 Wall. 627, 636. *Cuebas y Arredondo* v. *Cuebas y Arredondo,* 223 U. S. 376, 390.

The power of the courts over alimony and the support and care of children in connection with divorce is broad. Extensive revision and alteration of previous decrees is authorized and exercised. R. L. c. 152, § 33. *Burrows* v. *Purple,* 107 Mass. 428. *Graves* v. *Graves,* 108 Mass. 314. *Parker* v. *Parker,* 211 Mass. 139. *Brown* v. *Brown,* 222 Mass. 415. Appropriate orders as to the

support and care of children are an important part of proceedings for divorce. They may be modified from time to time to meet changing conditions. The order of the Superior Court that its modification of the earlier decree should be entered *nunc pro tunc* was within its power. Both parties were before the court. So far as their rights as to one another are concerned, they are concluded by the order.

In order to prevent misapprehension it ought to be said that the order cannot have the effect of imposing upon the libellee legal liability for the debt of Dr. Ryder for services rendered subsequent to the last Monday of December, 1910, and before the entry of the decree here assailed. It already had been decided that, under the facts and the decree existing at the time those services were rendered, there was no liability therefor on the part of the libellee. *Ryder* v. *Perkins*, 219 Mass. 525. It would be beyond the power of a court to establish, by the entry of a *nunc pro tunc* order authorizing the libellant to employ any physician she chose, a legal liability for such employment of a physician by her at a time when she had no such authority and could not pledge the credit of the libellee therefor. A liability to a third person for a debt for which there is no liability whatever cannot be wrought by the entry of such *nunc pro tunc* order. A new debt cannot be created at the time of the entry of such an order, to take effect as of a time long past. Liability in contract is not thus established. See *Hanscom* v. *Malden & Melrose Gas Light Co.* 220 Mass. 1. There is nothing in the opinion in *Ryder* v. *Perkins*, 219 Mass. 525, which by reasonable intendment intimates that such liability thus can be made out.

Since there is no error as between the parties hereto by the decree appealed from, let the entry be

*Decree affirmed.*