HENRY DIGGS *vs.* MOCIEL A. DIGGS.

Middlesex.   May 17, 1935. — June 27, 1935.

Present: RUGG, C.J., PIERCE, DONAHUE, LUMMUS, & QUA, JJ.

*Marriage and Divorce,* Decree nisi, Decree absolute, Abatement of libel by death. *Probate Court,* Decree.

After the entry of a decree of divorce *nisi* and its suspension under Divorce Rule 4 of the Probate Courts (1924) by the seasonable filing of the libellee's objections to a decree absolute, the libellant's death before disposal of the objections, though more than six months after the entry of the decree *nisi,* ended the case, and the court thereafter had no jurisdiction to enter a decree overruling the objections *nunc pro tunc* as of a day before such death.

LIBEL for divorce, filed in the Probate Court for the county of Middlesex on September 24, 1930.

The proceedings are described in the opinion. The decree from which appeal was taken was entered by order of *Beane*, J.

*H. Williams,* (*F. P. Hanford* with him,) for the libellee.

*J. S. R. Bourne,* for the administrator of the estate of next of kin of libellant.

Rugg, C.J.   This is an appeal from a decree overruling objections to a decree *nisi* entered in a divorce case and dismissing a petition to vacate that decree. A libel for divorce was filed by Henry Diggs, hereafter called the libellant, on September 24, 1930, against his wife, Mociel A. Diggs, hereafter called the libellee. A divorce *nisi* on the grounds of cruel and abusive treatment was granted to the libellant on January 16, 1931. On February 12, 1931, the libellee filed a petition setting forth objections to the decree *nisi* becoming absolute and praying that it be vacated. There was a hearing on this petition at some time not shown by the record, but assumed by both parties at the argument to have been on May 6, 1931. The libellant died on October 18, 1931. No decision was rendered on this petition until December 18, 1934, when the objections were overruled and the petition was dismissed as of May 6, 1931. From this action the libellee appealed. The administrator of the estate of the mother and next of kin of the libellant, deceased since his death, asserting that property rights are involved, has appeared and argued in opposition to the contentions of the libellee.

There is no report of the evidence and no finding of material facts by the trial judge. Therefore, the single question presented is whether as matter of law the petition setting forth objections to the decree *nisi* becoming absolute rightly could have been dismissed on December 18, 1934, as of May 6, 1931. Courts have inherent powers in appropriate cases to make entries *nunc pro tunc. Currier* v. *Lowell,* 16 Pick. 170. *Perkins* v. *Perkins,* 225 Mass. 392. The precise point for decision is whether such an order was permissible in the circumstances here disclosed.

It is provided by G. L. (Ter. Ed.) c. 208, § 21, that

decrees for divorce shall in the first instance be decrees *nisi* and shall become absolute after the expiration of six months unless the court within that period for sufficient cause upon application of any party interested otherwise orders.   The slight verbal changes made in the statute from time to time have wrought no alteration in its meaning.   *Main* v. *County of Plymouth*, 223 Mass. 66, 69.   By Divorce Rule 4 of the Probate Courts (1924), in force prior to November 1, 1934, after the filing by the libellee of a statement of objections to an absolute decree before the expiration of six months from the granting of the decree of divorce *nisi*, such "decree shall not become absolute until such objections have been disposed of by the court."   The same provision is now in Rule 40 of the Probate Courts (1934).   This is a valid rule.   It is in effect a general order that, upon the filing of a statement of objections within six months after the entry of the decree *nisi*, no decree absolute shall be entered because of the mere efflux of time without some judicial disposition of the objections.   It prevents a decree *nisi* from becoming a decree absolute by lapse of time, even though a longer period than six months has elapsed after a statement of objections has been filed, until those objections have been disposed of.   It follows that the divorce *nisi* in the case at bar had not become absolute on October 18, 1931, when the libellant died, because the objections filed by the libellee had not then been disposed of.   *Brown* v. *Brown*, 207 Mass. 254.

A decree of divorce entered *nisi* does not dissolve the marriage.   After the entry of such a decree, the death of either party before the decree has been made absolute puts an end to the proceeding for divorce, and thereafter the divorce cannot be made absolute either by order of court or by operation of the statute.   A libel for divorce is personal to the libellant.   It is abated by the death of either party. The object of divorce is to dissolve the marriage.   The status of marriage ceases to exist instantly upon such death. It would be vain for the law to attempt to loose the bonds of matrimony thus so completely severed.   There can be no

divorce unless both parties are alive at the time it is granted. This is the result required by reason. The authorities are to that effect. *Chase* v. *Webster*, 168 Mass. 228, 230. *Rice* v. *Rice*, 184 Mass. 488. *Koffman* v. *Koffman*, 193 Mass. 593, 596. *Rollins* v. *Gould*, 244 Mass. 270, 272. *Brigham, petitioner*, 176 Mass. 223, 226. *Rawson* v. *Rawson*, 156 Mass. 578. *Stanhope* v. *Stanhope*, 11 P. D. 103. See *Winslow* v. *Winslow*, 7 Mass. 96.

In the circumstances revealed on this record there is no room for the operation of the principle underlying the entry *nunc pro tunc* of orders, decrees, decisions and judgments. Courts possess inherent power in appropriate cases to make such entries. Their design is to preserve to a party to a proceeding in court some right which would otherwise be lost. *Currier* v. *Lowell*, 16 Pick. 170. *Perkins* v. *Perkins*, 225 Mass. 392. *DeMarco* v. *Pease*, 253 Mass. 499, 505. No rights of the libellant will be preserved by the *nunc pro tunc* order here assailed. The only purpose of the *nunc pro tunc* entry here made was to dispose of the objections of the libellee to the decree *nisi* becoming absolute as of such a date as to permit that decree to become absolute before the death of the libellant. In substance and effect it was an attempt to enter the decree absolute for divorce *nunc pro tunc* as of a time before the death of the libellant. That would preserve no right of the libellant. It relates to a matter as to which the libellant ceased to have any concern at the time of his death. It can benefit only his heirs at law as distinguished from the libellee as his widow. It works a distinct hardship on the libellee, who at the time of the death of the libellant rightly assumed that she was his widow. The public has no interest in such a *nunc pro tunc* entry. The interest of the public is in the preservation of the marriage status until actually dissolved by an effectual decision of the court. *Hanson* v. *Hanson*, 287 Mass. 154. *French* v. *McAnarney*, 290 Mass. 544, 548. A divorce proceeding has been held not to be a "civil action" and hence not reviewable by a writ of review. *Lucas* v. *Lucas*, 3 Gray, 136. The public welfare is not subserved

by accelerating the date of a divorce absolute for the benefit of the heirs of a deceased libellant.

The entry of the *nunc pro tunc* decree on December 18, 1934, as of May 6, 1931, was beyond the power of the court and must be reversed.

*Ordered accordingly.*