*Northern District*

No. 4990

### THE BLISS COMPANY

v.

### RISS & COMPANY, INC.

(October 1, 1956)

*Brooks, J.* This is action of tort to recover for damage to 148 rolls of automobile upholstery shipped by motor carrier from Willow Run, Michigan, to plaintiff at Lowell, Mass. It is alleged that plaintiff delivered the rolls in question, to defendant who is a carrier of goods for hire, to be conveyed from Willow Run to Lowell, on a truck operated by defendant and that defendant so negligently and carelessly conveyed the goods that they were damaged. The answer is a general denial.

At the trial it was agreed that the only issue was whether defendant was the originating carrier. It was also agreed that if defendant was found to be the originating carrier, there should be a finding for plaintiff in the amount of $769.63, and if the defendant was found not to be the originating carrier, judgment should be for defendant.

On behalf of defendant, W. D. Lemon, Assistant Supervisor of Material Handling of the Kaiser-Frazer Corporation, Willow Run, testified by deposition that on or about September 23, 1952, he was making a shipment of the automobile upholstery in question from Kaiser-Frazer Corporation at Willow Run to the Massachusetts Mohair Plush Company, Lowell, Mass., the former name of the plaintiff corporation. This was done pursuant to a bill of lading which is attached to the report as Exhibit A. This shipment was loaded by the employees of Kaiser-Frazer Corporation onto a semi-trailer, upon which was painted the name, "Dundee Truck Line, Inc."

The shipment was sealed and remained sealed until delivery at Lowell where the upholstery was found to be damaged.

Interrogatories Nos. 15 and 16 of the deposition were as follows:

Question:

Please state the name and address of carrier which transported the above-mentioned shipment from the Kaiser-Frazer plant at Willow Run, Michigan.

Answer:

The name of the carrier was Riss and Company, via Dundee Cartage Company of Dundee, Michigan.

Question:

Is it not a fact that Dundee Truck Line, Inc., Dundee, Michigan, was the carrier which transported the above-mentioned shipment from the Kaiser-Frazer plant at Willow Run, Michigan?

Answer:

Riss & Company was the carrier, but the name of the "Dundee Truck Line, Inc.," appeared on the semi-trailer, and the bill of lading was signed "Dundee."

On cross-interrogatories propounded by the plaintiff to Lemon were the following questions and answers Nos. 13, 14, 15, and 17.

Question:

Did the bill of lading issued by Kaiser-Frazer Corporation in connection with the shipment of 148 rolls of automobile upholstery designate Riss & Company as the carrier?

Answer:

This appears to call for a legal conclusion; the bill of lading speaks for itself; but it was Riss & Company which undertook delivery of the shipment, as carrier.

Question:

If the answer to interrogatory No. 13 is in the negative, please state the name of the person or organization who was designated as such carrier.

Answer:

Riss & Company was the carrier, so far as Kaiser-Frazer Company was concerned.

Question:

Was not Riss & Company in fact the carrier of the shipment of the 148 rolls of automobile upholstery consigned to Massachusetts Mohair Plush Company on September 23, 1952, by Kaiser-Frazer Corporation?

Answer:

Yes, sir.

Question:

If in answer to the defendant's interrogatories Nos. 15 and 16 you stated that a person or organization other than Riss & Company was the carrier which transported the shipment of the 148 rolls of automobile upholstery, do you

now wish to change this statement so as to say that Riss & Co. was such carrier?

Answer:

No, sir. Riss & Company was the carrier.

Lemon further testified on cross-interrogatories that Dundee Truck Line, Inc., upon moving the vehicle upon which shipment was made was acting as agent for Riss & Company.

It was agreed that delivery was made by O'Meara Truck Service.

Defendant's case was submitted to the court upon the following: "Additional Agreed Statement of Facts" (which was agreed to by plaintiff) and the two delivery receipts, (photostatic copies of which are attached to the report). The court's attention was called to 49 USC §306 and §20 (11).

The Agreed Statement of Facts was in part as follows:

"Defendant did not have authority from the Interstate Commerce Commission to operate between Willow Run and Detroit, nor between Boston and Lowell.

"Dundee Truck Line, Inc., did have authority to operate between Willow Run and Detroit and O'Meara Truck Service had authority to operate between Boston and Lowell.

"The goods in question were loaded on a Dundee semi-trailer in the place of business of shipper at Willow Run which is 30 miles from Detroit."

Prior to trial defendant filed a notice to plaintiff to admit facts. Those pertinent to the issue are as follows:

1. That the shipment of 148 rolls of auto upholstery, damage to which is alleged in the Plaintiff's Declaration, was delivered to the defendant by the Kaiser-Frazer Corporation at its plant at Willow Run, Michigan.

2. That the shipment of 148 rolls of auto upholstery, damage to which is alleged in the Plaintiff's Declaration, was loaded on the de-

fendant's trailer by the Kaiser-Frazer Corporation at Willow Run, Michigan.

3. That the shipment of 148 rolls of auto upholstery, damage to which is alleged in Plaintiff's Declaration were the only goods carried by the defendant from the plant of Kaiser-Frazer Corporation, Willow Run, Michigan, to Boston, Massachusetts, on its trailer.

4. That the shipment of 148 rolls of auto upholstery, damage to which is alleged in Plaintiff's Declaration, were the only goods carried by the defendant from the plant of Kaiser-Frazer Corporation, Willow Run, Michigan, to the plaintiff's plant in Lowell, Massachusetts, on its trailer.

Plaintiff's answers to the above notice were as follows:

1. Admitted.

2. Admitted.

3. This can be neither admitted nor denied because neither the plaintiff nor any of its agents or servants have any knowledge as to the contents of the trailer in which the goods were carried during its trip from Willow Run, Michigan to Boston, Massachusetts.

4. This can be neither admitted nor denied because neither the plaintiff nor any of its agents or servants have any knowledge as to the contents of the trailer in which the goods were carried during its trip from Willow Run, Michigan, to the plaintiff's plant at Lowell, Massachusetts.

Subsequently, defendant filed the following motion to strike demand for facts and answers thereto:

"The defendant says that at the time the defendant heretofore filed its notice to the plaintiff to admit material facts its attorney believed that the goods in question were delivered to the defendant by the shipper, Kaiser-Frazer Corp. at

Willow Run, Michigan, whereas the fact is that the said goods were not delivered to the defendant by said shipper at Willow Run, Michigan, but were delivered to a third carrier, and therefore the defendant moves that demand Nos. 1, 3, 4, and 7 and the answers filed in response thereto be stricken as being improperly included therein."

The parties argued this motion at the trial. On March 6, 1956, at the hearing on the report the court stated that it had not acted on the motion because it understood that it had not been formally marked for hearing. At the close of the hearing on the report, the court denied the motion as of January 18, 1956, the date of the trial.

At the close of the trial defendant made the following requests for rulings:

5.  Since the certificates of public convenience and necessity issued to the defendant did not authorize operation by it between Willow Run, Michigan, and Detroit, Michigan, such an operation by it would have been in violation of 49 USC §306.

6.  Since the certificate of public convenience and necessity issued to the defendant did not authorize operation by it between Willow Run, Michigan, and Detroit, Michigan, Dundee Truck Line, Inc., could not legally have acted as agent of the defendant in such operation as the defendant would have been in violation of 49 USC §306.

7.  Since the defendant was neither the initial nor the delivering carrier, in order for the plaintiff to recover in this action, the plaintiff must prove that the alleged damage to the goods occurred while the goods were being transported by the defendant.

8.  The Carmack Amendment, 49 USC §20 (11) requires the initial carrier only to issue a receipt or bill of lading to the shipper.

9.  The evidence does not warrant a finding for the plaintiff.

The court's rulings were as follows:

5.  Immaterial.

6.  See answer to No. 5.

7. Denied, I do not find the facts upon which the request is based.
8. Immaterial.
9. Denied.

The court found the following facts:

"I find as a fact the defendant was the principal involved in this transaction as carrier at both the initial place of loading and the place of delivery, namely Willow Run, Michigan, from there to Detroit and from Detroit to Lowell," and found for the plaintiff. This report contains all the evidence material to the question reported.

Defendant claims to be aggrieved by the court's ruling Nos. 5, 6, 8, 9, and the court's failure to act on defendant's motion to strike demand for facts and answers thereto.

The trial court has found for plaintiff on the simple but vital issue as to who was the originating carrier. This issue is vital because under the so-called Carmack Amendment, 49 USC §20 (11), the initial carrier issues the bill of lading and is liable to the lawful holder thereof for any damage caused by it or by any common carrier to which the property may be delivered. There is no controversy on the meaning of the Amendment, therefore it need not be further recited.

There are two issues before this court.
1. Whether the evidence most favorable to plaintiff supports the finding.
2. Whether prejudicial error has occurred by reason of the judge's failure to act on the motion to strike, until after the finding.

The finding will not be reversed unless plainly wrong. *Cohen v. Santoianni*, 330 Mass. 187, 191; *Fulton v. Belmont*, 1955 A.S. 679, 680.

If there is any credible evidence to support the finding, it will be upheld. *Charles I. Hosmer, Inc. v. C.*, 302 Mass. 495, 499; *Spritz v. Brockton Savings Bank*, 305 Mass. 170, 172.

The evidence is of three sorts: (a) oral testimony; (b) plaintiff's answers to defendant's notice to admit facts; (c) documentary evidence.

a. The oral evidence was given in the form of a deposition on behalf of defendant by the witness, Lemon. He stated on direct examination that defendant was the carrier who transported the shipment from Kaiser-Frazer Plant at Willow Run. On cross-examination, he testified that defendant was the carrier, referring presumably to the originating carrier. He also testified that Dundee Truck Line, Inc., was acting as agent for defendant.

b. Plaintiff in response to defendant's notice to admit facts, "admitted" that Kaiser-Frazer Corporation delivered the consignment to defendant. It "admitted" that the shipment was loaded by Kaiser-Frazer Corporation on defendant's trailer. What gives these admissions weight is that they were suggested to plaintiff by defendant as facts to be admitted.

c. The documentary evidence consisted of the bill of lading and two delivery receipts. The bill of lading lists defendant as "carrier." It is signed by Lemon for Kaiser-Frazer Corporation and by "O'B" for "Dundee Agent." The route is given:

"Dundee to Detroit, Riss & Company to Mass. One receipt on Riss & Company stationery is signed by O'Meara for the consignee, and gives what appears to be the division of freight charges between Dundee and Riss & Company, and refers also to O'Meara as interline-carrier.

The other receipt on O'Meara stationery gives the names of the shipper, Kaiser-Frazer Corporation, and the consignee, Mohair Plush Company. Under the heading "Route and Jct." is "Riss & Company at Boston, Massachusetts." Also given is the freight split between Riss & Company and O'Meara.

There is no evidence that a delivery receipt was ever given to Dundee Truck Lines, Inc.

It has been argued by defendant that Dundee was the originating carrier since it was mentioned in the bill of lading in a connection consistent with that status, namely, where the "Route" specifies "Dundee to Detroit, Riss & Company to Massachusetts." Defendant points out that Dundee had the right to operate between Willow Run and Detroit, whereas Riss & Company did not. Defendant also stresses the fact that according to the Riss & Company receipt, charges were split by Dundee and Riss between Willow Run and Massachusetts, indicating that Dundee was the originating and Riss & Company the second carrier.

Against this evidence is the fact that the bill of lading names Riss & Company as the carrier and mentions Dundee only as agent. There is apparently no delivery receipt from Riss & Company to Dundee, furthermore, there is the explicit testimony of the shipper's representative that so far as Kaiser-Frazer was concerned, Riss & Company was the carrier.

Then there is the admission made by plaintiff, at the suggestion of defendant, that the shipment was delivered to it. This admission, defendant's counsel explains as an erroneous statement based on a misunderstanding which he endeavored to correct by the motion to strike.

In view of the foregoing evidence, we cannot say that the trial judge was plainly wrong in finding that Riss & Company was the originating carrier. The fact that it had no right to operate between Willow Run and Detroit is some evidence that it had not so operated, but certainly that is not conclusive and the judge evidently was not impressed by it. Certainly if it had operated illegally, it hardly lay in its mouth to claim thereby immunity from liability. Similarly, the fact that charges were split by Dundee and Riss & Company is some evidence in support of defendant's contention. However, there

is enough on the other side to warrant us in sustaining the trial court on this issue.

Now as to the effect of the trial judge's failure seasonably to act on the motion to strike demands for facts and answers thereto. The docket shows the following chronology:

9/29/53   Defendants filed notice to plaintiff to admit facts.

10/30/53   Plaintiff files answers.

5/16/55   Defendant's motion to strike out demand for facts and answers.

1/11/56   Finding for plaintiff.

1/19/56   Finding for plaintiff.

3/16/56   Hearing on draft report.

3/16/56   Motion to strike out demand and answers denied as of 1/18/56.

Defendant's explanation through counsel of the demand that plaintiff admit delivery by Kaiser-Frazer Corporation to defendant was that at the time he drafted the demand, he thought it to be correct, when in fact, it was not. The docket indicates that nearly twenty months expired before counsel moved to correct what he claims was his misunderstanding.

The court would undeniably have had the right to deny the motion to strike prior to this finding. Such a motion does not differ with respect to the court's discretion from many motions, for example, a motion to amend the pleadings or for a new trial. That discretion is wide. After having allowed a motion for a new trial, the court may vacate the allowance. As was said in *DeLuca v. Boston Elevated Railway*, 312 Mass. 495, 496:

"Before the entry of (final) judgment, it was within the power of the trial judge to make the records of the court conform to the facts by striking therefrom an order that did not conform to the decision intended by him to be made, or, even if the order entered did so conform, it was within the power of the trial judge to reconsider

his decision and, if he concluded that it was erroneous, to correct the error."

The right of a judge to alter his findings and rulings until final judgment is well recognized. *Fine v. C.,* 312 Mass. 252, 259. *Graustein v. Barry,* 315 Mass. 518, 522. *Sheriff v. Gillow,* 320 Mass. 46, 49.

The entry, *nunc pro tunc,* is frequently and properly made. The subject is fully discussed in *Perkins v. Perkins,* 225 Mass. 392, where the court said at page 396:

"The function of a *nunc pro tunc* order in general is to put upon the record and to render efficacious some finding, direction or adjudication of the court made actually or inferentially at an earlier time which by accident, mistake or oversight was not made matter of record, or to validate some proceeding actually taken but by oversight or mistake not authorized, or to prevent a failure of justice resulting directly or indirectly from delay in court proceedings subsequent to a time when a judgment, order or decree ought to and would have been entered, save that the cause was pending under advisement."

As stated on page 397: "an initial infirmity cannot be bolstered by the entry of a new order to take effect retrospectively as of a date anterior to that on which in fact it is entered." There was here no such infirmity.

It can be plausibly said here that the delay in denying the motion was an oversight and that the nunc pro tunc entry was solely for the purpose of remedying the oversight and clearing the record.

More important, perhaps, is the fact that had the judge granted the motion to strike, thereby eliminating the admissions objectionable to defendant, there would still be evidence sufficient to support the ultimate finding.

This is a case where the court might properly have found either way. We are therefore not disposed to

disturb the finding for plaintiff.

*Report dismissed, judgment to be entered for plaintiff for $769.63.*

Walter F. Kernan, for the Plaintiff.

Alfred R. Shrigley, for the Defendant.