WARREN FITCH *vs.* GEORGE M. INGALLS & others.

Suffolk.    January 9, 10, 1930. — March 31, 1930.

Present: RUGG, C.J., CROSBY, CARROLL, SANDERSON, & FIELD, JJ.

*Equity Jurisdiction,* Rescission, To relieve from results of fraud, Damages. *Damages,* In suit in equity. *Equity Pleading and Practice,* Appeal. *Evidence,* Presumptions and burden of proof.

At the hearing of a suit in equity for relief from fraud alleged to have been practised by the defendant upon the plaintiff as one of a syndicate, which included the defendant, in inducing the plaintiff to invest money in the promotion by the syndicate of Florida land by falsely representing to him that the defendant was coming into the syndicate upon an equal basis with the other members, whereas the defendant knew he was to receive and did receive a commission for procuring the money from the plaintiff and other members of the syndicate, there was evidence that the defendant made to the plaintiff the representation alleged and that he was paid a sum of money as commission by the seller of the land. There was evidence that the defendant was in close relations with the seller of the land; he testified that the money he so received was a present, and afterwards said it was a commission, and, so far as appeared, he never disclosed to any of his associates that it had been received by him until he testified at the trial. There was no evidence as to the precise time when the plaintiff first learned that the defendant had received the commission. A second payment by the plaintiff was made on September 28, 1925. The defendant testified that late in October, 1925, he had received a letter from the seller accompanied by a statement showing him "what was due to me on the commission." His attention being called to the fact that the previous day he had testified "it was a present," he stated, "Well, I thought it was until that time when that statement come." Asked, "which do you say now that this money that was paid to you — do you say it was something due to you," he answered, "I say it was part of a commission, yes." There was evidence showing that from the outset the defendant performed the functions usually discharged by a broker acting for compensation, and that he concealed from the plaintiff and the other members of the syndicate that such a commission had been received by him. The judge found that from the beginning the defendant knew he was to receive some compensation although unaware of its exact amount, and that his representation to the plaintiff that he was to become a member of the syndicate on an equal basis with the others was false. *Held,* that

(1) While mere disbelief of testimony respecting facts is not proof of facts of an opposite nature, the judge was warranted in believing

that the defendant knew he was to receive a commission, and in disbelieving his testimony as to the time when such knowledge was acquired;

(2) Upon the entire evidence and the fair inferences which could be drawn therefrom, the judge was justified in finding that the defendant's representation was false.

In the suit above described, it further appeared that, before bringing suit, the plaintiff and the other members of the syndicate excepting the defendant and the seller had repudiated the syndicate agreement; that just previous to repudiation they were owners of undivided interests in the land purchased; that the plaintiff did not tender to the defendant an assignment of the plaintiff's interest in the property under the syndicate agreement and declaration of trust at the time it was repudiated by him; that the agreement provided that, in the event of a repudiation by a member of the syndicate, his interest should vest in the remaining members. The judge ruled as matter of law that the plaintiff and defendant were joint adventurers; that the defendant owed to the plaintiff the duties of a fiduciary; that the defendant's employment as a broker was inconsistent with, and in violation of, his fiduciary duty and was a material fraud for which he was liable; that the plaintiff was entitled to recover as damages the loss which he had sustained rather than a share of the profit obtained by the defendant resulting from his fraud; and that there could not be a rescission, because the plaintiff had neither made nor tendered to the defendant an assignment of his interest in the property under the syndicate agreement, and that such a tender made in the bill came too late. Upon appeals by both parties, it was *held*, that

(1) The defendant's relation to his associates was one of trust and confidence; he was bound in his dealings with them to act with absolute good faith, and a violation of that duty constituted fraud entitling the plaintiff to relief;

(2) The plaintiff was not limited to the recovery of a share of the secret profit received by the defendant but was entitled to damages incurred by reason of the defendant's fraud;

(3) The mere repudiation by the plaintiff of the agreement was inadequate to support a contention that a tender of restitution was unnecessary in order to effect a rescission;

(4) The duty of restitution resting upon the plaintiff was neither discharged nor executed by the chance that the operation of the provision of the syndicate agreement as to repudiation resulted in placing the interest of the plaintiff in the defendant and the seller;

(5) The ruling that there could be no recovery on the ground of rescission was correct;

(6) The rulings were correct and the final decree based thereon was affirmed.

BILL IN EQUITY, filed in the Superior Court on December 14, 1926, and afterwards amended. The substance of the bill is described in the opinion.

In the Superior Court, the suit was heard by *Macleod*, J.,

a stenographer having been appointed under the provisions of G. L. c. 214, § 24, as amended, and Equity Rule 29 (1926). It appeared that the plaintiff's second payment of $10,800 was made to the defendant on September 28, 1925. Other material facts found by the judge are stated in the opinion.

A final decree was entered directing the defendant Ingalls to pay to the plaintiff the sum of $5,900 and costs. Both parties appealed.

*M. C. Taylor*, for the plaintiff.

*T. F. Callahan*, for the defendant George M. Ingalls.

CROSBY, J.   This is a bill in equity to reach and apply certain corporate stock in satisfaction of a claim based upon the alleged fraud of the defendant Ingalls. Robert E. Erskine and Robert S. Erskine were made parties defendant in the bill, but by an interlocutory decree entered January 10, 1927, the bill was dismissed as to them. Thereafter a stenographer was appointed to take the evidence. The trial judge filed "Findings and Rulings," and in accordance therewith a final decree was entered for the plaintiff in the sum of $5,900. Both parties appealed from the final decree.

It appears from the findings of the trial judge that for several years before 1921 the defendant Ingalls, who will hereafter be referred to as the defendant, was a wholesale dealer in fish, in Boston, and was active in many organizations connected with that trade. He sold his business in 1921 and thereafter spent each winter in Florida and made investments in real estate there. In some of these transactions the firm of R. E. and R. S. Erskine of Lake Worth, Florida, acted as his broker. With the members of this firm, who were father and son, the defendant was also socially intimate.

In the spring of 1925 the defendant returned to Boston and made several visits to his old associates at the Fish Pier and discussed with them the profits which investors in Florida real estate were reputed to be making. Several of his former associates expressed the desire to invest if a suitable opportunity offered. On or about August 8, 1925,

Robert S. Erskine, the junior member of the firm, obtained from one Watson a written option for the purchase of a tract of land in Florida containing about fifty-five acres, having an ocean frontage of three thousand, three hundred and fifty feet, at $75 per front foot.  He telegraphed his father, who was in Boston, informing him of the option and offering the land for sale at $85 per front foot, representing a total of $284,750.  On receipt of this telegram Robert E. Erskine showed it to the defendant and the latter showed it to his associates at the Fish Pier and conferred with them in regard to the purchase of the property.  After some negotiations a syndicate of ten persons was organized including the defendant, the Erskines and seven others including the plaintiff.  A "Syndicate Agreement and Declaration of Trust," providing for the purchase of the property for $284,750, of which $117,250 was payable in cash, was signed by all the members of the syndicate and by R. S. Erskine as trustee.  The price agreed upon for a sale of the property was on a basis of $85 a front foot.

Before the execution of the syndicate agreement and in contemplation thereof, each member, except the Erskines, made an initial deposit of $1,000 as a "binder" and subsequently made a payment of $10,800.  These sums were all given to the defendant, who handed them to the Erskines. At the same time the defendant tendered to R. E. Erskine as his share of the second payment a certified check for $10,800.  Erskine returned the check to the defendant stating that there would be something coming to him out of the commission on the sale of the property.  The defendant's commission as finally determined and received by him was $11,829.68, a sum slightly in excess of his share of the "binder" together with his share of the first payment.

In October, 1925, the property was conveyed by Watson to R. S. Erskine pursuant to the terms of the option which the latter had secured from Watson, namely, $251,250, or at the rate of $75 per front foot.  Soon thereafter the valuation of Florida real estate showed a rapid and continuous decline, and in March, 1926, the Boston members of the syndicate became apprehensive about the situation

and sent a representative to examine the property and the condition of the market. As a result of this examination the plaintiff and the other Boston members of the syndicate refused to make a third payment which had previously been requested, and repudiated the entire transaction. The plaintiff seeks to have the syndicate agreement rescinded for fraudulent misrepresentations and misconduct of the defendant, and to recover the $11,800 which he paid, with interest, and for such further relief as may be proper.

The trial judge found "that the defendant represented to the plaintiff that he was coming into this Syndicate upon an equal basis with the other members; that the defendant, during the whole course of the negotiations, knew that he was acting as a broker and would receive a commission if the sale were effected; that, while he did not know the exact amount of the commission he was to receive, he was well aware that it would be a substantial amount; and that the defendant did not disclose to the plaintiff and the plaintiff did not then know any of these facts . . . that the defendant's representation that he was coming into the Syndicate upon the same basis as his fellow members was a false and fraudulent representation upon which the plaintiff justifiably relied with respect to a matter that must have been, as the defendant intended it should be, a material, if not the controlling, factor in inducing the plaintiff to make his investment." The judge ruled as matter of law that the plaintiff and defendant were joint adventurers; that the latter owed to the former the duties of a fiduciary; that the defendant's employment as a broker was inconsistent with, and in violation of, his fiduciary duty and was a material fraud for which he was liable. These rulings were amply supported by the findings and entitle the plaintiff to damages. *Goldman* v. *Cosgrove*, 172 Wis. 462. *Selwyn & Co.* v. *Waller*, 212 N. Y. 507. *Sander* v. *Newman*, 174 Wis. 321. *Jackson* v. *Hooper*, 6 Buch. 185, 199–200. *Jordan* v. *Markham*, 130 Iowa, 546. *Gamble* v. *Loffler*, 28 S. D. 239. *Church* v. *Odell*, 100 Minn. 98. The judge further ruled that the plaintiff was entitled to recover as damages the loss which he had

sustained rather than the profit obtained by the defendant resulting from his fraud; and ruled, that there could not be a rescission, because the plaintiff had neither made nor tendered to the defendant an assignment of his interest in the property under the syndicate agreement.

It is the contention of the plaintiff that he should be permitted to recover on the ground of rescission, thus entitling him to receive all that he had invested. The defendant contends that he is not liable in damages; and in any event, if he is liable, damages should be on the basis that the commission received by him was a secret profit in which the plaintiff as a joint adventurer is entitled to share. The defendant contends that the findings of the trial judge upon the issue of false representation are not supported by the evidence which is reported in full. "The familiar rule in such cases in equity is that, while it is the duty of this court on appeal to examine the evidence and decide the case according to their judgment, giving due weight to the finding of the trial judge, yet since the trial judge has had the advantage of seeing the witnesses and thus of weighing their testimony, his finding will not be reversed unless plainly wrong." *Donnelly* v. *Alden,* 229 Mass. 109, 114. The finding that the defendant represented to the plaintiff that he was coming into the syndicate upon an equal basis with the other members is amply supported by the evidence. Indeed, the defendant testified that such was his understanding.

The trial judge further found that the defendant, during the whole course of the negotiations, knew that he was acting as a broker and would receive a commission if the sale were effected. We are of opinion that this finding was not without evidence to support it. Under examination by counsel for the plaintiff, the defendant testified that late in October, 1925, he had received a statement from the Erskines, that a letter accompanied the statement, and that the letter had been destroyed. The following colloquy then ensued: "Q. What was the letter about? A. Oh, it was just enclosing a statement showing me what was due to me on the commission. — Q. Well, now, you talk today about

being due to you. I thought you said yesterday it was a present? A. Well, I thought it was until that time when that statement come. — Q. Well, which do you say now that this money that was paid to you — do you say it was something due to you? A. Why, I say it was part of a commission, yes." The defendant was also asked by counsel. for the plaintiff: "You never told Mr. Watts or Mr. Fitch or Mr. Ward or any of those people that you had made a commission of $11,000 for selling them their shares in the syndicate, did you?" He answered, "No." The defendant testified that he did not know that the money paid him was a part of a commission until he received the statement late in October. This testimony the judge was not required to believe. There was evidence that the defendant was in close relations with the Erskines; he testified that the money was a present, and afterwards said it was a commission, and so far as appears he never disclosed to any of his associates that it had been received by him until he testified at the trial. The precise time when the plaintiff first learned that the defendant had received the commission does not appear from the record. Of course mere disbelief of testimony respecting facts is not proof of facts of an opposite nature. *Martell* v. *Dorey,* 235 Mass. 35, 41. *McDonough* v. *Vozzela,* 247 Mass. 552, 558. It is equally well settled that testimony may be believed in part and disbelieved as to other parts. *Klayman* v. *Silberstein,* 252 Mass. 275, 278. *Guinan* v. *Famous Players-Lasky Corp.* 267 Mass. 501, 519. Upon the direct testimony and the reasonable inferences to be drawn therefrom the trial judge was warranted in believing that the defendant knew he was to receive a part of the commission, and in disbelieving his testimony as to the time such knowledge was acquired. While such disbelief afforded no affirmative proof as to when the defendant knew he was to receive a part of the commission, on the evidence showing that from the outset he performed the functions usually discharged by a broker acting for compensation, the judge was not unwarranted in concluding that from the beginning the defendant knew he was to receive some compensation although unaware of its exact

amount. This conclusion receives further support in the evidence of the concealment by him from the plaintiff and the other members of the syndicate that such a commission had been received by him. It follows that, upon the entire evidence and the fair inferences which could be drawn therefrom, the judge was justified in finding that the defendant's representation that he was to become a member of the syndicate on an equal basis with the others was false. This finding is amply supported by the direct testimony. The defendant's relation to his associates was one of trust and confidence; he was bound in his dealings with them to act with absolute good faith. A violation of his duty in that respect constitutes actual fraud for which the plaintiff is afforded relief. *Hedden* v. *Griffin*, 136 Mass. 229. *Harwood* v. *Security Mutual Life Ins. Co.* 263 Mass. 341, 345. *Sim* v. *Edenborn*, 242 U. S. 131. *Heckscher* v. *Edenborn*, 203 N. Y. 210. *Selwyn & Co.* v. *Waller, supra.* *Goldman* v. *Cosgrove, supra.* *Yale Gas Stove Co.* v. *Wilcox*, 64 Conn. 101.

It follows that the plaintiff was not limited to the recovery of a share of the secret profit received by the defendant but was entitled to damages incurred by reason of the defendant's fraud. By stipulation of the parties it is agreed that if the judge rules that the plaintiff is entitled to recover "and further rules: (a) that the measure of damages is not the proportionate share of the plaintiff in the commission of $11,829.68, and (b) that he is not entitled to recover his full contribution to the syndicate, then damages are to be assessed in the sum of $5,900."

It remains to be considered whether, if the findings of the trial judge are to stand, the plaintiff is entitled to rescind and recover the sums paid by him to the syndicate. "Two general cardinal rules are laid down as to the exercise of the right to rescind, of which the first is that the plaintiff must return all that he received under the void contract, and the second is that both parties must be put *in statu quo*, or, as it is frequently phrased, must be restored to their former position." *O'Shea* v. *Vaughn*, 201 Mass. 412, 422. *Colil* v. *Massachusetts Security Corp.* 247 Mass. 30, 33. *Sim* v. *Edenborn, supra*, at page 134. The plain-

tiff contends that he is entitled to rescind the agreement and recover the entire amount which he has paid, and cites in support of that contention *Munson* v. *Fishburn*, 183 Cal. 206, *Heckscher* v. *Edenborn, supra,* and *Sim* v. *Edenborn*, 242 U. S. 131. An examination of these cases shows that they are distinguishable in their facts from the case at bar. It is plain that there can be no recovery on the ground of rescission, and the judge so ruled. He found that the plaintiff did not tender to the defendant an assignment of the plaintiff's interest in the property under the syndicate agreement and declaration of trust at the time it was repudiated by him. This finding is not controverted by the plaintiff, but he argues that the question of restitution is not involved for the reason that he received no benefit which it was necessary to return. It is manifest, however, that, immediately before his repudiation of the transaction, by virtue of the syndicate agreement and declaration of trust he was the owner of an undivided equitable interest in the land. His mere repudiation of the agreement of itself did not operate to divest him of his interest thereunder. Apart from the terms of the contract, some action on his part was necessary in order to divest him of such interest. There was none according to the undisputed finding of the judge. A mere repudiation is inadequate to support the contention that a tender of restitution was unnecessary. The plaintiff, having repudiated the agreement, thereby vested in the remaining members of the syndicate whatever right, title or interest he had thereunder by virtue of the provision in the agreement that such a result would follow in the event of repudiation by any member. The judge further ruled that the tender made in the bill came too late because restitution was then impossible. This inferentially is predicated upon the earlier ruling that by repudiation by the plaintiff, by virtue of the terms of the syndicate agreement, he lost whatever interest he had theretofore held. The plaintiff further argues that, since by reason of the operation of the provision for liquidated damages all the interest which he had is now vested in the defendant and the Erskines as

the only remaining members of the syndicate, they are in the same position as if an assignment had been made to them and accepted. The duty of restitution resting upon the plaintiff was neither discharged nor executed by the chance that the operation of the provision for liquidated damages resulted in placing the interest of the plaintiff in the defendant and the Erskines. It follows that the ruling that there can be no recovery on the ground of rescission was correct.

As the findings of the judge respecting the false representations of fact made by the defendant were warranted, and as the rulings were correct, in accordance with the stipulation of the parties the plaintiff is entitled to recover damages in the sum of $5,900. The final decree is to be affirmed with costs.

*Ordered accordingly.*