ARTHUR O. JENNINGS
*vs.*
K. MAUDE JENNINGS

Superior Court          Fairfield County          File No. 53238

MEMORANDUM FILED MAY 4, 1942.

*Pullman & Comley,* of Bridgeport, for the Plaintiff.

*Herbert L. Cohen* and *Harry Schwartz,* of Bridgeport, for the Defendant.

Memorandum of decision on remonstrance to referee's report.

CORNELL, J. The remonstrance is addressed, not only to the content of the referee's report, but also to the recommen-dations and expressions of opinions in it as these are explained in a "Memorandum Supplementing Report of State Referee" submitted following the filing of the report. Such recommen-dations and opinions form no part of the report and hence, are not proper subjects of remonstrance. *Hegel vs. Hegel,* 99

Conn. 18, 19; *Meserole vs. Liquor Control Commission*, 125 id. 104, 106; *Skarzynski vs. Liquor Control Commission*, 122 id. 521, 526.

In the part of the remonstrance which may be considered, the contention advanced is that the facts recited in paragraphs 6, 7, 8 and 11 of the original report, as well as those stated in the memorandum supplementing it, are found without evidence. In such supplemental statement, only one material fact, additional to those appearing in the original report, is exposed, viz., "that the relative financial resources and abilities of the parties.... prevailed substantially during all the period covered by the arrearages", in payments for the support of the children which plaintiff was required to make. This is, itself, an ultimate fact drawn from the subordinate facts recited in the paragraphs in the original report at which the remonstrance is leveled. The validity of its content is hence dependent upon whether the attack upon such subordinate facts is successful. The entire transcript has been examined and the conclusion is that the facts recited in the named paragraphs (i.e. 6, 7, 8 and 11 of the original report) are amply supported in the evidence. In consequence, the remonstrance is overruled in all of its aspects; the report is accepted and judgment must enter as the court may determine from the facts found.

On June 30, 1939, the defendant was granted a decree of divorce upon a cross complaint filed by her. There were then living—and still are—three minor children, issue of the marriage, the care, custody and education of whom was committed to the defendant. In addition to a lump sum of $750 awarded to defendant as alimony, the plaintiff was ordered to pay her "$50. monthly for the support of each child" while in her custody. Unquestioned findings in the referee's report show that ever since the decree of divorce was entered, one of the daughters has remained with the plaintiff and that the other two children stayed with him, also, until June 20, 1940, since which latter date, and at the time of the hearing before the referee, they have been with the defendant. In consequence, the plaintiff has been under the obligation of paying to the defendant in accordance with such order the sum of $50 per month for the support of each of such children since the day mentioned. This, however, he has wholly failed to do.

In the original motion filed by him on September 11, 1940,

plaintiff, in substance, alleges that prior to the filing of the decree of divorce, the parties had entered into a stipulation governing the subjects of custody of the children, and allowance for their support and maintenance, according to which the custody of the children was to be divided between the parents. However, it is stated that through error the court was not fully informed of the alleged agreement and as a result, the judgment in awarding sole custody to the defendant was "contrary to the intentions of the parties as expressed in said stipulation." The court is urged to "re-open said decree of divorce, and after hearing the parties, modify said decree in such manner that it shall accord with the agreements and stipulations of the parties...." However, in so far as the alleged nonconformance of the decree with the asserted stipulation relates to the matter of custody of the children it is no longer of any consequence in view of the fact that, as hereinafter appears, the court adopts the referee's recommendation that the custody be henceforth divided—a solution in which the parties evidently concur. A question seems to have arisen, whether under this motion, the relief sought included that of modifying the judgment to conform to the stipulation of the parties as respects the sums to be paid by the plaintiff toward the support of the children while they might be in defendant's custody. In this situation, the plaintiff, on June 25, 1941, filed an amendment to his then pending original motion.

In this, the plaintiff asks specifically "that the order for support payments be modified, *retroactively*." Irrespective of whether there is any substantial difference between the provisions of the stipulation and the order in the decree of divorce as respects the plaintiff's duty to support the children while they might be in defendant's custody, it is evident that plaintiff's major purpose is to be relieved from the obligation, not only of contributing to the support and maintenance of his children in the future, while they may be with the defendant, but also to be absolved from paying the arrearages which have accrued under the order contained in the decree of divorce. This, he would accomplish under the original motion by inducing the court to correct the judgment to conform to the stipulation of the parties, which involves the premise that the judgment does not speak the truth and implies that if it be made to do so he would owe nothing under the order for support and maintenance of the children contained in it. Quite to the contrary under the amendment, however, he

assumes the validity of the order as stated in the decree, but asks that he be freed from paying the arrearages which have accumulated by reason of his default because, as he alleges: "Since the entry of the decree....the plaintiff's income has been materially reduced." Both species of relief, he apparently conceives to be within the conception of section 5184 of the General Statutes, Revision of 1930, which provides that: "On any complaint for a divorce, the court may, at any time, make any proper order as to the custody, care and education of the children and may, at any time thereafter, annul or vary such order." Whatever the applicability of this section to the relief asked in the amendment referred to, that sought in the original motion is· not within its purview. For the cause there stated is one for the modification of a judgment on the ground of mistake or accident, which can be effectuated only by an independent action in equity. *Crane vs. Loomis,* 128 Conn. 697; *Hoey vs. Investors' Mortgage & Guaranty Co.,* 118 id. 226, 230.

Moreover, in assuming that it was the prerogative of the parties, in event of a decree of divorce being granted to one of them, to formulate by stipulation the provisions of the judgment with respect to the custody of their children, the relief asked for depends upon an erroneous premise. The determination of such questions is for the court, which cannot abdicate its duty to the compact of the parents. *Lilley vs. Lilley,* 125 Conn. 339, 343. The agreements of the latter are, of course, entitled to consideration, but the controlling influence must be the best interests and welfare of the children with which the stipulations of the parties may or may not be consistent. Such stipulations are "suggestions" only, which the court may properly adopt and with equal propriety ignore, according as they serve or fail to conduce to the promotion of the well being of the children who would be affected by a decree incorporating their purport. *Lilley vs. Lilley, supra,* p. 343. It follows that the circumstance that the provisions of the decree of divorce in the present instance did not contain such an order for their care and custody or provision for their maintenance as the parties to the action had agreed between themselves would be proper—and that quite regardless of whether such "stipulations" were brought to the attention of the court or not, at the time the judgment was entered—furnishes no basis in equity or otherwise for a modification of the judgment or the orders contained therein on the ground

of accident or mistake.

This conclusion also disposes of plaintiff's contention that in view of the facts stated, he is entitled to have a *nunc pro tunc* order entered to cause the order for support and main- tenance in the decree of divorce to conform to the stipulation. "The function of a *nunc pro tunc* order in general is to put upon the record and to render efficacious some finding, direc- tion or adjudication of the court made *actually or inferentially* at an earlier time, which by accident, mistake or oversight was not made matter of record, or to validate some proceeding *actually taken* but by oversight or mistake not authorized, or to prevent a failure of justice resulting, directly or indirectly from delay in court proceedings subsequently to a time when a judgment, order or decree ought to and would have been entered, save that the cause was pending under advisement." (Italics added.) *Perkins vs. Perkins,* 225 Mass. 392, 396, 114 N.E. 713. Plaintiff does not allege, nor do the facts reported by the referee indicate, that the court had intended at the time the decree of divorce was entered, to incorporate therein the substance or purport of the stipulation of the parties. On the contrary, the motion asserts that: "At the time of the entry of said judgment, the court was not fully informed of said stipulation. . . ." and otherwise indicates that if any mis- take occurred, it was not the error of the court, but that of the parties only. Such a situation is not one presenting a proper subject matter for the entry of an order *nunc pro tunc* the effect of authorizing which, were it to be indulged would be to correct the mistake of the parties—not that of the court. "It has been held that a defect in a judgment, order or decree which expressed exactly the intention of the court at the time when it was made cannot be remedied by a *nunc pro tunc* entry, and that an initial infirmity cannot be bolstered by the entry of a new order to take effect retrospectively as of a date anterior to that on which in fact it is entered." *Perkins vs. Perkins, supra* (225 Mass. p. 397). Even if it were averred that the court had erred and the facts appearing in the report sustained such an allegation, still in the absence of a finding that the judgment entered did not at the time it was rendered reflect the then present intention of the court, the basis for the entry of an order *nunc pro tunc* to correct the mistake would be lacking.

Concerning the demand for a modification of the order in question in so for as it relates to payments for the support

and maintenance of the children as contained in the amend-
ment to the original motion, it can hardly be conceded that
section 5184 of the General Statutes, Revision of 1930 (quoted
*supra*) alone, confers on the court a continuing control over
payments ordered by it to be made by either parent. That
statute relates only to the matter of custody of minor children.
However, read together with sections 5186 and 5187, it would
seem that such a power is implicit in the composite provisions
of these statutes and in analogy to that provision contained in
section 5182 relative to alimony payable from income or earn-
ings which reads as follows: "Any order for the payment of
alimony from income may, at any time thereafter, be set
aside or altered by such court." The power to amend any
of its orders providing for the support, maintenance and edu-
cation of children is complementary to that of awarding cus-
tody of them in such manner as seems best adapted to pro-
tecting them. The theme of the opinion in *Lyon vs. Lyon*, 21
Conn. 184, 195 (which was concerned with the enforcement
of a decree for alimony) is more urgently applicable to orders
for the support of children of divorced parents, viz.: ". . . .it
was undoubtedly the intention of the legislature to invest the
court, in this as in all other cases, where it has the right to
render judgments, decrees and orders, with such power and
authority as should be necessary to carry them into full effect.
Such power is, from the nature of a judicial tribunal, neces-
sary, and inherent in its very constitution." *Morrill vs. Mor-
rill*, 83 Conn. 479, 488. Although there is an obvious dis-
tinction between orders for payment of alimony out of income
or earnings and orders for the support and maintenance of
children (27 *C.J.S. Divorce* §321, p. 1218), the authorities
dealing with the power of courts to modify or annul orders
for the payment of alimony are much in point as respects that
of a court to do likewise with respect to orders for the support
and maintenance of children of a dissolved marriage—and
are much more numerous. In fact, in a somewhat similar
situation to that presented here, the Supreme Court of Errors
regarded section 5182 as controlling. *Lilley vs. Lilley*, p. 341
*et seq.*

The claim advanced in the amendment to the motion (i.e.
that due to changes in the plaintiff's financial status, the order
for the support of the children while in defendant's custody,
be modified to operate *retroactively* and thus to excuse plain-
tiff from the obligation to pay accrued arrearages) must, also,

be denied. The authorities are divided on the question whether courts have power even under statutes of like purport as section 5182, *supra,* to make such an order nullifying or modifying one previously entered for the payment of alimony from income or earnings operative retrospectively where installments have become due and remain unpaid. It is affirmed in the courts of a minority of the states of which the following cases are fairly representative: *Kirkbride vs. Van Note,* 275 N.Y. 244, 9 N.E. (2d) 852, 112 A.L.R. 243; *Fox vs. Fox,* 263 N.Y. 68, 188 N.E. 160; *Karlin vs. Karlin,* 280 N.Y. 32, 19 N.E. (2d) 669; *Winkel vs. Winkel,* 178 Md. 489, 15 Atl. (2d) 914, 921; *Wenzel vs. Wenzel,* 67 S.D. 537, 295 N.W. 493.

But a decisive majority holds otherwise, upon the theory that such payments become vested as they become due. The view expressed in these is summarized as follows: "Statutes authorizing the alteration and modification of judgments or decrees allowing alimony have no retrospective effect, but the statutory power to modify extends only to future installments and not to alimony already accrued, unless there is clear language manifesting a contrary intent." 27 C.J.S. *Divorce* §276, p. 1089. To the same effect, see 17 *Am. Jur. Divorce and Separation* §648, p. 494; Anno. 94 A.L.R. 331. Among the more recent cases which hold to this view are: *Biewend vs. Biewend,* 17 Cal. (2d) 108, 109 Pac. (2d) 701, 132 A.L.R. 1264, 1267; *Boyer vs. Andrews,* 143 Fla. 462, 196 So. 825, 828; *Banda vs. Banda,* 192 Ga. 5, 14 S.E. (2d) 479, 480; *Sharp vs. Sharp,* 154 Kan. 175, 117 Pac. (2d) 561, 562; *Cotton vs. Wright,* 193 La. 520, 190 So. 665, 668, 669; *State ex rel. Couplin vs. Hostetter,* 344 Mo. 770, 129 S.W. (2d) 1, 5; *Wassung vs. Wassung,* 136 Neb. 440, 286 N.W. 340, 342; *Clark vs. Clark,* 139 Neb. 446, 297 N.W. 661, 663; *Holcomb vs. Holcomb,* 122 W. Va. 293, 8 S.E. (2d) 889, 890. A number of other cases dealing with the subject are collected in the *A.L.R. Blue Book of Supplemental Decisions.* Among cases holding the majority view, are several which have announced that accrued payments of alimony under an order, judgment or decree of a competent court of one state will be enforced in another under the full faith and credit clause of the United States Constitution. Examples: *Biewend vs. Biewend, supra; Boyer vs. Andrews, supra; Sistare vs. Sistare,* 218 U.S. 1, 30 S. Ct. 682, 54 L. ed. 905, 28 L.R.A. (n.s.) 1068. And so, also, with respect to orders for the support of a minor child.

*Yarborough vs. Yarborough,* 290 U.S. 202, 54 S. Ct. 181, 78 L. ed. 269, 90 A.L.R. 924. In Connecticut, the question was involved in *Lasprogato vs. Lasprogato,* 127 Conn. 510, 513, but the decision of the trial court was reversed on other grounds and no comment was made concerning it in the opinion. The majority view is adopted as decisive that this court is without power to modify the order in question operative retroactively so as to release plaintiff from the duty thereby imposed of paying any of the arrearages which have accrued thereunder.

In his original motion the plaintiff also asks that a revision of the order in question be made, "in such manner as shall accord with the best interests and welfare of said minor children." This must be read in connection with the allegations contained in the amendment later filed in which it is asserted that "plaintiff's income has been materially reduced" since the decree containing the order for the support and maintenance of the minor children was entered. "Although there is some authority to the contrary, [in] a proceeding to modify an alimony decree....in the absence of fraud or mistake, or want of jurisdiction, the decree cannot be altered unless it is shown that the conditions and circumstances of the parties have changed substantially since the decree was rendered." 27 C.J.S. *Divorce,* §239, p. 989. Substantially the same rule applies to an order for the support, maintenance and education of children, but to the other considerations mentioned, are to be added the death of any of them or a material change in their needs, or as their welfare may be otherwise affected. *Lilley vs. Lilley,* 125 Conn. 339, 342. The referee's supplemental statement observes that "....the situation as to comparative financial resources and abilities of the parties....prevailed substantially during all of the period covered by the arrearages...." This statement is well sustained by the subordinate facts recited in paragraphs 6, 7, 8 and 11 of the report. The important consideration, however, in the absence of facts indicative of the existence of other grounds for a prospectively operative modification of the order for support, is whether there has been a substantial change in the financial position of either parent *since the decree was entered.* Examination of the facts set forth in the report discloses none. Plaintiff's remarriage does not appear to have disadvantaged him in this respect, but if it were found that it had, such a circumstance in itself would furnish no valid reason for affording him relief. *Heard vs. Heard,* 116 Conn. 632, 636. If anything, the

plaintiff's income has increased rather than diminished in the period referred to. Thus, plaintiff's personal income from all services in 1939 was found by the referee to have been $3,406.77, but in 1940 it was $3,978.95. Information concerning that for 1941 is meagre. It shows only the commissions earned by plaintiff from his employment up to July 1, 1941. While no final conclusion may be properly based upon this, it at least does not show a decline, but on the contrary, at the figure of $1,100 up to the date mentioned is at the rate of $2,200 per annum as compared with $1,679.94 for 1939 and $1,525.47 for 1940. Even his marriage to his present wife, which occurred on August 12, 1939, has not added any evident drain on his income. On the contrary it seems to have lightened his burdens since it appears that out of her own independent income of about $3,000 per annum she has contributed to their joint needs between $500 and $1,000 per year (mostly for household help); owns two family cars and has supplied their place of abode during the summer of 1941 in the form of a 30-foot boat, which latter fact increased the plaintiff's income for that year by the sum of $1,000 since it enabled him to rent the house which he occupies rent free for that sum during "the season." The only change in the defendant's income in 1940 was not a substantial one, but represents a decrease of $239.78, viz., the difference between a net income in 1939 of $5,992.27 and that in 1940 of $5,752.49. The report affords no basis for computing or estimating the defendant's income for 1941. The findings are devoid of facts showing any change in the needs of the children or otherwise since the decree was entered.

Under the circumstances detailed, no substantial reason can be discovered which would justify amending the order for the support and maintenance of the children, as contained in the decree of divorce, especially in view of the condition that such provision is one that incorporates a precise obligation which plaintiff voluntarily undertook in a written stipulation executed by him with defendant on the eve of the hearing in the action of divorce in which defendant prevailed and but 43 days before he contracted his present marriage. The effect of reducing the payments for support specified therein, under the conditions exposed in the referee's report, would not only not constitute a modification sanctioned by the statute (Gen. Stat. [1930] §5182) but would, in effect and in result, amount to a new and different decision on substantially the same state

of material facts as obtained at the time the decree was granted containing an order which had not only the effect of a final judgment on the facts as they then were (and still are) but, also, the approval of the plaintiff. That sort of procedure is not to be countenanced. *Hein vs. Hein,* 127 Conn. 503, 506, 507. Otherwise, there could be no finality of judgment. *Rommell vs. Walsh,* 127 Conn. 272, 276, 277. But even if the facts disclosed in the report were such as to sanction a modification or even a nullification of the order for the support of the children, there would be no inclination to grant it while the plaintiff remains in default for failure to comply with it. 27 C.J.S. *Divorce* §239, p. 997.

On June 28, 1941, the defendant filed a "Motion for Judgment for Contempt of Court" because of plaintiff's default in making the payments for the support of the children during the period while two of them have been in defendant's custody, viz., since June 20, 1941. It does not seem that any order to appear and show cause why he should not be adjudged in contempt was ever issued. Neither is there anything in the report to indicate that the plaintiff waived these prerequisites to the infliction of any restraint or penalty to enforce compliance with the court's order. What is clear is that plaintiff hoped to avoid performing the duty imposed upon him in the decree by being relieved of such duty and has offered nothing cognizable by the court as a valid excuse for his disobedience of the order if it survived his attack upon it. On the facts found, in the light of the conclusions reached here, he is in contempt of court. No order of commitment can be entered, however, unless and until a new motion is filed showing in terms of dollars the amount he shall be in arrears up to the time of the filing of such motion, accompanied with an order to show cause and citation, followed by a hearing before the court at which he shall have opportunity to present any reasons which he may believe he has to influence the court not to commit him until he has purged himself.

The conclusions are: (1) That the decree in so far as it relates to the custody of the children be so amended that the plaintiff shall have the care and custody of Edward and Ann from one week after the close of school to one week before the opening of school in each year and that the defendant shall have such care and custody during the remaining time, the other parent in each instance to have reasonable right of visitation; (2) The motion for modification of the order con-

tained in the decree of divorce in so far as it seeks the elimination or amendment of the provisions requiring the plaintiff to make the payments specified therein for or toward the support and maintenance of each child while such child may be in the custody of the defendant, is denied; (3) The plaintiff is in contempt of court for failure to comply with the order contained in the decree of divorce requiring him to make the payments specified, for or toward the support of each child while in defendant's custody, from June 20, 1941, to the date of the last hearing before the referee, viz., November 13, 1941.

Judgment accordingly.